## The Buffalo Fertilizer Company

### *vs.*

## The Aroostook Mutual Fire Insurance Company.

Aroostook.   Opinion November 13, 1912.

*Application. Assumpsit. Assignment. Consent. Contract. Conveyance. Deed. Mortgage. Policy of Insurance. R. S., Chap. 49, Sect. 1. Security. Title. R. S., Chap. 92, Sect. 1.*

Assumpsit upon a fire insurance policy issued to the plaintiff by the defendant Company on the 22d day of December, 1909, for one thousand dollars, on a certain building occupied by the assured as a fertilizer house, in Houlton, Maine, and which was destroyed by fire on the 23d day of February, 1910.

The defendant contends that, at the time of the fire which destroyed said building, the plaintiff had no insurable interest covered by the policy in the property destroyed and that on the 23d day of December, 1909, the plaintiff in violation of the terms of the policy, delivered to the International Agricultural Corporation a warranty deed of the building described in the policy, which deed was dated September 20, 1909.

The plaintiff in answer contends that the warranty deed given to the International Company, though absolute on its face, was in fact a conveyance for the security of money advanced to pay debts of the plaintiff: by the International Company.

In support of these propositions, the plaintiff introduced four written agreements executed by and between the plaintiff and the International Company prior to the conveyance of the premises insured designed to effect a transfer of all the plaintiff's property to the International Company. The policy in suit was never assigned or transferred to said company nor

was any assent in writing or otherwise ever given by the defendant to any sale or conveyance of the property.

*Held:*    That a most critical analysis of the written instruments above described upon which the plaintiff relies, will fail to disclose any of the elements or characteristics of a mortgage.

There is nothing in any of the agreements purporting to be a defeasance.

No one of them contains any provisions which could defeat the force or operation of the plaintiff's deed.

According to the express stipulation in the policy, it was avoided by the sale of the property without the consent of the defendant.

On report.    Judgment for defendant.

This is an action of assumpsit upon a fire insurance policy issued to the plaintiff by the defendant company on the 22d day of December, 1909, for the sum of one thousand dollars, on a certain building occupied by the assured as a fertilizer house in Houlton, Maine. At the conclusion of the evidence, the case was reported to the Law Court for determination; the Law Court to render such final judgment upon said evidence as the legal rights of the parties may require.

The case is stated in the opinion.

*Shaw & Shaw, and White & Case,* for plaintiff.

*G. H. Smith, and Madigan & Madigan,* for defendant.

Sitting: Whitehouse, C. J., Savage, Spear, Cornish, King, Haley, JJ.

Whitehouse, C. J.    This is an action of assumpsit upon a fire insurance policy issued to the plaintiff by the defendant company on the 22nd day of December, 1909, for the sum of $1,000, on a certain building occupied by the assured as a fertilizer house in Houlton, Maine.

It is provided by sec. 1 of Chap. 49 of the R. S. that "A contract of insurance—life excepted—is an agreement by which one party for a consideration promises to pay money or its equivalent or do some act of value to the assured upon the destruction or injury of something in which the other party had an interest."

To entitle the plaintiff to recover in this action, it was therefore incumbent upon him to establish both an insurable interest in the

building destroyed and a valid subsisting contract of insurance at the time of its destruction.

The application for the policy declared upon contains a warranty that the plaintiff is the sole owner of the property to be insured and the policy itself contains the established provision of the standard policy that "this policy shall be void" if the property "shall be sold without the assent of the company in writing or in print."

The property was destroyed by fire on the 23rd of February, 1910, and it is contended by the defendant, first, that the plaintiff at that time had no insurable interest covered by this policy in the property destroyed, and, secondly, that on the 23rd day of December, 1909, the day following the issuance of this policy, the plaintiff, in violation of its terms, delivered to the International Agricultural Corporation a warranty deed of the building described in the policy.

But it is contended by the plaintiff that the warranty deed given to the International company, though absolute on its face, was in fact a conveyance for the security of money advanced to pay the debts of the plaintiff by the International company, and that the "ownership of the property, in law and in equity, was the same at the time of the fire as on the date of the policy."

In support of these propositions, the plaintiff introduces four written agreements executed by and between the plaintiff and the International company, prior to the conveyance of the premises insured, designed to effect a transfer of all the properties of the plaintiff to the International company.

In the first of these indentures dated July 10, 1909, the plaintiff agreed to sell and convey to the International company certain properties and plants including the building covered by the policy in suit, and the International company agreed to pay therefor in its capital stock at par, the full market value of the properties to be determined by appraisers. It was further agreed that upon receipt of the conveyance of the property, the International should deliver to the plaintiff its capital stock equal to eighty per cent of the estimated value of the plaintiff's assets; that this stock should be held in the plaintiff's treasury and if the value fixed by the appraisers should be less than eighty per cent of the estimated value, the requisite number of shares of stock should be returned to the International company; and on the other hand if the appraisal exceeded

80% of the estimated value enough additional shares of stock should be issued to the plaintiff to supply the deficiency.

In pursuance of this agreement, the plaintiff executed the deed above mentioned of the premises in question. The deed was dated September 20, 1909, but it was not delivered and recorded until December 23, 1909, the next day after the policy in suit was issued.

Subsequently, an agreement was made between the International company and a syndicate composed of the larger owners of the plaintiff company, and still later another agreement between this syndicate and the International company and a further agreement between the plaintiff and the International, all for the ultimate purpose of aiding the plaintiff in adjusting its liabilities in accordance with the terms of the agreement of July 10. By the terms of the three later agreements, the members of the syndicate were to accept the International stock at par for all of the plaintiff's debts paid by them, this stock to be deducted from the amount which the International had stipulated to pay the plaintiff; and for all of the plaintiff's debts paid by the International company, a corresponding amount was to be retained by that company. But it was expressly stipulated that the certificates of stock to be issued in payment for the property to be acquired from the plaintiff under the agreement of July 10, should not be delivered to the plaintiff, but should be delivered to the Bankers' Trust Company to be held against a certificate to be issued to the representative of the plaintiff. Otherwise the agreement of July 10 was to "remain in full force and effect."

The policy in suit was never assigned or transferred to the International company, and no assent, in writing or otherwise, was ever given by the defendant to any sale or conveyance of the property. But on December 23, 1909, the day the deed from the plaintiff to the International company was recorded, six other policies covering the same property originally issued to the plaintiff were assigned by the plaintiff to the International company, and the assignments assented to by the respective companies that issued them.

From this summarized statement of the stipulations in the several agreements and brief review of the transactions material to the questions raised in this case, it is evident that the facts disclosed, considered with reference to the settled rules of law in this State,

not only fail to support the plaintiff's propositions but clearly justify the contentions of the defendant; first, that at the time of the fire the plaintiff had no insurable interest in the property described in the policy, and second, that the policy was invalidated by the act of the plaintiff in selling and conveying the property to the International company without the assent of the defendant, in contravention of a clause in the policy which expressly declares that it shall be void if the property is sold without such assent.

It is not in controversy that the warranty deed of December 23, 1909, unconditional in its terms, was effectual to transfer from the plaintiff to the International company, an absolute title to the property in question, unless the operation of it was controlled by force of the agreements and transactions above described. The plaintiff claims that "the writings and agreements between the plaintiff and the International company, including the deed relied upon by the defendant, all taken and construed together, amount to a conditional sale only, or at most a conveyance for the security of a debt neither of which constitutes an alienation."

As defined in section 1 of Chap. 92, R. S., mortgages "include those made in the usual form, in which the condition is set forth in the deed, and those made by a conveyance appearing on its face to be absolute, with an instrument of defeasance executed at the same time or as part of the same transaction." But the most critical analysis of the written instruments above described, upon which the plaintiff relies, will fail to disclose any of the elements or characteristics of a mortgage. In the first place, it does not appear that the deed was given to the International as security for any liabilities assumed for the plaintiff, and secondly, there is nothing in any of these agreements purporting to be a defeasance. No one of them contains any provision which could possibly have the effect to defeat the force or operation of the plaintiff's deed. No contingency is suggested in which the title to these premises would revert to the plaintiff. It has been seen that by virtue of one of the agreements, the stock of the International company which was to be issued to the plaintiff in payment for its assets, was to be held by the Bankers' Trust Company until the plaintiff's indebtedness had been liquidated, and it had been determined whether this stock should be delivered to the syndicate above mentioned or to the International company. Thus the International had ample security in the stock held by the

Trust Company for all the advances made by it. It did not hold these premises as security; by virtue of the deed of December 23, it held the absolute legal title. See *Tomlison* v. *Ins. Co.,* 47 Maine, 432.

The remote and contingent interest which the plaintiff had in the stock of the International company held by the Bankers' Trust Company was not covered by the terms of the policy in suit. R. S., Chap. 49, sections 24 and 31; *Bailey* v. *Ins. Co.,* 56 Maine, 474; *Balow* v. *Ins. Co.,* 77 Mich., 540.

The second ground of defense, that the plaintiff sold the premises without the assent of the defendant, is equally conclusive against the plaintiff's right to recover on the policy in suit. No further discussion of the evidence is required to prove that on December 23, 1909, in pursuance of prior written stipulations the plaintiff sold and conveyed the premises in question to the International company under an agreement to accept in payment the stock of the International company at par as above more fully stated. The premises were then "sold" within the meaning of that term as used in the policy. A complete alienation of the plaintiff's entire interest, legal and equitable, in that specific piece of property was thereby effected. It has been noticed that all of the other insurance policies covering this property were assigned by the plaintiff to the International company, December 23, 1909. While this fact cannot modify the legal effect of written agreements it has much significance upon the question of the plaintiff's understanding at the time in regard to the nature and purpose of the entire transaction. It is obvious that these other policies would not have been assigned to the International company unless it was understood that the property had been "sold" within the meaning of the policy. It is fairly to be inferred from the testimony of the plaintiff's witnesses that the failure to have the policy in suit assigned to the International company after the conveyance of December 23 was an inadvertent omission.

According to the express stipulation in the policy it was avoided by a sale of the property without the consent of the defendant. *Lyford* v. *Insurance Co.,* 99 Maine, 273; *Brown* v. *Ins. Co.,* 156 Mass., 587; *Boston Bank* v. *Ins. Co.,* 201 Mass., 350. And the certificate must be,

*Judgment for the defendant.*